AO 91 (Rev. 11/11) Criminal Complaint

**FILED**
September 28, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: sec
DEPUTY

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

United States of America
v.
Wilber Rafael GARCES-Perez

*Defendant(s)*

Case No. **1:26-mj-00918-DH**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 20, 2026 in the county of Travis in the Western District of Texas, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 USC 111(a)(1) & (b) | Assaulting, Resisting, and Impeding a Federal Officer |

This criminal complaint is based on these facts:
See Attached Affidavit

❒ Continued on the attached sheet.

[signature]
*Complainant's signature*

SA Rick Bazan
*Printed name and title*

Sworn to before me and signed in my presence.

[signature]
*Judge's signature*

Date: 09/28/2026

City and state: Austin, Texas

Dustin M. Howell, US Magistrate
*Printed name and title*

Print | Save As... | Attach | Reset

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**S E A L E D**

**UNITED STATES OF AMERICA,**

**Plaintiff.**

**v.**

**WILBER RAFAEL GARCES-PEREZ,**

**Defendant.**

**Criminal No.**
**1:26-mj-00918-DH**

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, SA Rick Bazan, state the following:

## INTRODUCTION

1. This affidavit is submitted in support of a Criminal Complaint against WILBER RAFAEL GARCES-PEREZ for violation of 18 U.S.C. § 111(a)(1) & (b), Assaulting, Resisting, Interfering, and Impeding a Federal Officer.

2. I am a Special Agent (SA) with U.S. Department of Homeland Security (DHS), Homeland Security Investigations (HSI), Austin, Texas (HSI-Austin). I received training at the Federal Law Enforcement Training Center, where I successfully completed the Federal Law Enforcement Criminal Investigator Training Program and the Immigration and Customs Enforcement Agent Training School. My responsibilities as a SA with HSI include, but are not limited to, conducting investigations, executing arrest warrants, executing search warrants, collecting evidence, interviewing witnesses, use of force, firearms and other law enforcement related duties. I have been a federal law enforcement officer since December 2007 and have

investigated and/or participated in investigations of child pornography, money laundering, narcotics, fraud, counter proliferation, smuggling, immigration and firearm related cases. I have participated in searches of premises and vehicles and assisted in gathering evidence by means of search warrant. This affidavit is for the limited purpose of establishing probable cause to support the Criminal Complaint and contains a summary of relevant facts. I have not included each fact known to me concerning the entities, individuals, and the events described in this affidavit.

3. Because this affidavit is submitted for the limited purposes of establishing probable cause, I have not included every fact known to me related to this investigation. Statements are presented in sum and substance.

**PROBABLE CAUSE**

4. On September 20, 2026, I began investigating an incident involving 18 U.S.C. § 111(a)(1) & (b), Assaulting, Resisting, Interfering, and Impeding a Federal Officer Immigration and Customs Enforcement/Enforcement and Removal Operations (ICE/ERO) Officer by Wilber Rafael GARCES-Perez. The incident occurred in Austin, Texas within the Western District of Texas. The two ERO Officers involved in the incident are identified as L.G. and D.F.

5. On September 21, 2026, HSI Special Agents interviewed D.F. who reported he was working with a partner, L.G, for immigration enforcement on September 20. They were driving separate SUVs. The SUVs were unmarked and equipped with police emergency lights and sirens. I know that D.F. was equipped with a body-worn camera during the incident, but L.G. did not have a body-worn camera.

6. D.F. told HSI that he initially noticed GARCES's blue Toyota sedan in the parking lot of the Village Shopping Center located at 2700 W. Anderson Lane at approximately 12:20pm. D.F. stated the blue sedan was parked against the curb in front of the restaurant with its emergency

flashers on. D.F. conducted law enforcement database checks on the blue sedan that showed it was registered to GARCES. D.F. confirmed that a final order of removal had been issued by an immigration judge on GARCES. D.F. saw the driver emerge from the restaurant and visually confirmed it was likely GARCES from a known immigration photograph. D.F. then saw GARCES get into the blue sedan and drive off from the parking lot onto W. Anderson Lane.

7. Both L.G. and D.F. followed GARCES, and D.F. shortly thereafter activated his emergency lights to stop GARCES. GARCES did not pull over and stop his car immediately. D.F. reported that L.G. blocked GARCES' car with his SUV. GARCES then stopped his car on the shoulder of the road. L.G.'s SUV was parked diagonally in front of GARCES' car. D.F. reported there was no contact between the cars and GARCES' car was in a safe area not blocking traffic. D.F. parked his SUV behind GARCES' car. D.F. and L.G. exited their cars, and D.F. activated his body-worn camera to record the encounter. The video shows L.G. dressed in a body armor vest with police markings in the center of his chest and a badge displayed on his upper left chest, as well as a hat with an ICE badge embroidered on the front of it. The video also included audio with L.G. clearly identifying himself to GARCES as an immigration officer.

8. D.F. stated both he and L.G. approached GARCES' car and contacted him. L.G. was positioned at the front driver's door near the sideview mirror. D.F. was by the side of the car next to the driver's door. GARCES rolled down his window slightly and spoke with L.G. in English. L.G. asked for GARCES' driver's license, which GARCES provided. D.F. took the driver's license and confirmed that GARCES was the person they were seeking.

9. L.G. and D.F. asked GARCES to place the car in park and step out. GARCES ignored the request to step out of the car and engaged in a Spanish conversation with L.G. about moving the car and parking it. The conversational tone was pleasant and not aggressive.

Approximately one minute later, GARCES abruptly closed the window and drove off. L.G. tried to avoid contact with the car but GARCES' driver's side-view mirror struck L.G. in his torso as it drove off.









10. L.G. and D.F. pursued GARCES with their emergency lights and sirens activated. GARCES led them on a high-speed chase through a commercial and residential area. During the pursuit, business cameras from the area recorded portions of the chase. The officer's lights and

sirens were activated as they pursued GARCES. D.F. requested assistance from the DPS dispatcher to help stop GARCES and, while making the request, lost sight of L.G. and GARCES. D.F. at that point turned off his body-worn camera.

11. D.F. later used his telephone to call L.G. who did not answer the phone. L.G. then called D.F. back and told D.F. where he was located. During the call, L.G. told D.F. that GARCES had attempted to strike L.G. with his car and L.G. had fired his pistol. D.F.'s video showed the car pursuit began at approximately 12:43pm. D.F. received the telephone call from L.G. at approximately 12:51 p.m. after the pursuit ended.

12. On September 20, 2026, I interviewed GARCES at the South Texas Detention Center in Pearsall, Texas. GARCES was read his Miranda rights in Spanish and stated he understood them and was willing to waive his rights and speak without an attorney present. During the electronically recorded interview, GARCES stated he is a citizen and national of Venezuela.

13. During the interview, GARCES stated that on September 20, 2026, he left a restaurant in the vicinity of the intersection of W. Anderson Lane and Anderson Square in Austin. GARCES was the only person in his car. GARCES said a Black SUV followed him but did not activate its emergency lights as GARCES traveled northbound onto Anderson Square. GARCES said the SUV cut him off at the intersection of State Highway 183 and Anderson Square. GARCES said the SUV passed him on the left, then turned diagonally in front of GARCES' car. The passenger side of the SUV was then in front of GARCES' front bumper.

14. GARCES stated the abrupt maneuver caused a collision with GARCES' car. GARCES said L.G. activated his emergency light equipment after the collision occurred.

GARCES stated he saw a similar SUV park behind him, but this second SUV maintained its distance. The second officer exited his vehicle but did not contact GARCES.

15. GARCES stated L.G. exited his SUV and approached GARCES' driver's window and communicated with GARCES in Spanish. GARCES stated L.G. identified himself as an immigration officer and demanded GARCES' identification. GARCES said he provided his Texas driver's license. He said that he only rolled his window down far enough to hand over his license.

16. GARCES said L.G. ordered GARCES to exit his car. GARCES said he knew he was going to be apprehended so he asked L.G. to let him park his car so his wife could come and pick it up for him.

17. GARCES stated that L.G. told him not to move the car and repeated that GARCES needed to get out of the car. GARCES admitted to disregarding the command to get out and drove off. GARCES said he turned sharply to the right and said a short pursuit ensued and ended when the SUV struck GARCES' car and caused it to spin around.

18. After coming to a forced stop, GARCES recalled L.G. firing his pistol into the back-right window of GARCES' car. GARCES was struck with a bullet in his upper back. GARCES stated after he was shot, L.G. opened the driver's door of his car and removed the keys from the ignition. He then told GARCES to stay inside and an ambulance was enroute.

**CONCLUSION**

19. Based on the facts set forth above, I respectfully submit that there is probable cause to charge Wilber Rafael GARCES-Perez with a violation of 18 U.S.C. § 111(a)(1) & (b), Assaulting, Resisting, Interfering, and Impeding a Federal Officer.

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

SA Rick Bazan
DHS/HSI

SWORN AND SUBSCRIBED before me this 28th day of September 2026 in Austin, Texas.

DUSTIN HOWELL
UNITED STATES MAGISTRATE JUDGE